BARRY J. PORTMAN
Federal Public Defender
JAY RORTY
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA  95113
Telephone:  (408) 291-7753

Counsel for Defendant LOPEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-00303 JF |
| Plaintiff, | ) ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS; REQUEST FOR EVIDENTIARY HEARING |
| vs. | ) ) ) | |
| CLAUDIA MARIA LOPEZ, | ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

Defendant Claudia Lopez is charged with distributing and conspiring to distribute a controlled substance (LSD), in violation of Title 21 U.S.C. §§ 841 and 846.  She moves to suppress statements she made on April 18, 2007, on the ground that the statements were involuntary and obtained in violation of the Due Process Clause.

## STATEMENT OF FACTS

On April 18, 2007, United States Postal Inspector Mitchell Herzog showed up at Claudia Lopez's home, flashed his badge, and said he had some questions about a case he was investigating.  See Declaration of Defendant Claudia Lopez ("Lopez Decl.") at ¶ 3.  When Ms.

1   Lopez asked what Inspector Herzog was investigating, he declined to say, responding: "Can you
2   first answer some questions, and then I'll tell you what about?"  See id. at ¶ 4.  When Ms. Lopez
3   said, "Don't I need a lawyer?," Herzog told her that asking for a lawyer was suspicious.  See id.
4   Ms. Lopez persisted, explaining that she knew from her classes at school that she should have a
5   lawyer and that she needed a lawyer.  See id.  Herzog told her that she really didn't need a lawyer
6   for what he was going to ask her.  See id.  Ms. Lopez again stated that she needed a lawyer and
7   again asked Herzog to tell her the subject of his investigation.  See id.  At that point, Herzog
8   presented Ms. Lopez with a Miranda waiver form and told her that if she would sign it, he would
9   tell her what this was all about and then she could decide if she wanted a lawyer.  See id.

10          At about the time that Herzog presented the Miranda waiver to Ms. Lopez, her 3-year-old
11  daughter and the girl's father came into the house.  See id. at ¶ 5.  Ms. Lopez was scared on their
12  behalf and still had no idea why Herzog wanted to question her.  She told her daughter's father to
13  take the girl out to the park, which he did.  See id.  After they left, Herzog told Ms. Lopez that if
14  she signed the form, "he would make things easy" for her, and that although he "couldn't
15  promise [her] anything," that it would not be a very big deal, as long as she signed.  He added
16  that this would be "easier" than the alternative – arresting her and doing "everything" at the
17  police station.  See id.  Faced with the threat of arrest, repeated dismissals of her request for
18  counsel, and Herzog's refusal to even tell her why he was there, Ms. Lopez signed the form.  See
19  id.

20          Even after Ms. Lopez signed the waiver, Herzog continued to threaten her with arrest.
21  Herzog demanded a writing sample, warning Ms. Lopez that if she refused, "he would get an
22  arrest warrant and could arrest [her] at any time."  See id. at ¶ 7.  Herzog said he could go to Ms.
23  Lopez's school and arrest her there, and then obtain the writing sample from her in jail.  See id.
24          After providing numerous writing samples, Ms. Lopez gave a statement, in which she
25  acknowledged having mailed a package containing LSD to Alaska.  See id. at ¶¶ 9-10.
26

Points and Authorities in Support of Motion to
Suppress                                                       2

ARGUMENT

I.   The Due Process Clause Requires the Suppression of Involuntary Statements

Pursuant to the Due Process Clause, a confession that is involuntary must be suppressed for all purposes, including impeachment Mincey v. Arizona, 437 U.S. 385, 397-98 (1978); see also Henry v. Kernan, 197 F.3d 1021, 1029 (9th Cir. 1999). The government has the burden of proving by a preponderance of the evidence that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 488-89 (1972); United States v. Leon Guerrero, 847 F.2d 1363, 1365 (9th Cir. 1988).

To be voluntary, a confession must be "'the product of a rational intellect and a free will.'" United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981) (quoting Blackburn v. Alabama, 361 U.S. 199, 208 (1960)). In determining whether a confession was "made freely, voluntarily and without compulsion or inducement of any kind," courts must examine the "totality of the circumstances." Withrow v. Williams, 507 U.S. 680, 689 (1993) (citations and internal quotation marks omitted). Coercion is not limited to physical coercion. As the Supreme Court made clear in Colorado v. Connelly, 479 U.S. 157 (1986), coercion also includes "more subtle forms of psychological persuasion." Id. at 164. "Subtle psychological coercion suffices as well, and at times more effectively, to overbear 'a rational intellect and free will.'" Tingle, 658 F.2d at 1335. For this reason, the Ninth Circuit has instructed courts to consider the totality of the circumstances to determine "whether the government obtained by statement by physical *or psychological* coercion, or by improper inducement so that the suspect's will was overborne." United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994).

II.  Ms. Lopez's Statement Must be Suppressed Because it was the Result of Impermissible Coercion

The present case is a classic example of how psychological coercion can be as effective as physical force. Inspector Herzog's efforts to intimidate Ms. Lopez began with his refusal to tell her even the reason he was questioning her, unless she complied with his instructions. He did not merely ignore her repeated requests for counsel; he let her know that her desire to have a

Points and Authorities in Support of Motion to Suppress       3

1  lawyer would come with a heavy price. If Ms. Lopez persisted in her "suspicious" requests for
2  counsel and refusal to sign the waiver, Inspector Herzog would refuse to disclose the reason for
3  the investigation, would subject her to a public arrest in front of her classmates, and would
4  conduct the interrogation in a jail cell.

5  Where the interrogator's purpose and objective in using a particular interrogation
6  technique is to cause fear on the part of the suspect, the court can look at what inference the
7  suspect could reasonably have drawn from the interrogator's statements in determining whether
8  the investigator exerted improper influence in order to elicit cooperation. See Tingle, 658 F.2d at
9  1336. In Tingle, the interrogator did not make an explicit threat, but told the suspect that she was
10 facing a very lengthy sentence and that she would not see her young child for a while. Id. at
11 1335. In addition, the interrogator emphasized that the suspect had a lot at stake and that it
12 would be in her best interest to cooperate. Id. The implication was that the suspect would be
13 separated from her child if she failed to cooperate. Id. at 1337. Inspector Herzog did not
14 explicitly threaten to separate Ms. Lopez from her daughter; he didn't have to. He *did* threaten to
15 arrest Ms. Lopez and take her to jail, a threat which, if carried out, would have effectively
16 separated her from her daughter.

17 Inspector Herzog's repeated, and ultimately successful, efforts to dissuade Ms. Lopez
18 from contacting an attorney were also coercive. An analogous situation occurred in Collazo v.
19 Estelle, 940 F.2d 411 (9th Cir. 1991) (en banc). In that case, police officers responded to the
20 suspect's request for a lawyer by warning him that "it 'might be worse' for him if he talked to an
21 attorney, and that it was in his interest to talk to them without one." Id. at 413. The Ninth
22 Circuit held that the suspect's subsequent statement was involuntary, explaining that the officers'
23 "words were calculated to pressure [the suspect] into changing his mind about remaining silent,

and into talking without counsel to his interrogation." Id. at 416.[1]

Herzog's intimidating threats were particularly effective because they were coupled with promises of better treatment in return for Ms. Lopez's cooperation.  While it is true that promises of leniency, in themselves, are not sufficient to render a confession involuntary, it is also true that voluntariness is judged according to the totality of the circumstances.  When taken in conjunction with Herzog's denial of Ms. Lopez's requests for counsel, his threats to arrest her, and his refusal to provide even the most basic information unless she signed a waiver of rights, Herzog's offer of the reward of "easier" treatment in return for compliance rendered Ms. Lopez's statement involuntary.

## CONCLUSION

For the reasons set forth above, Ms. Lopez respectfully requests that her April 18, 2007, statement be suppressed.  Alternatively, she respectfully requests an evidentiary hearing.


Dated: October 16, 2007

        Respectfully submitted,

        BARRY J. PORTMAN
        Federal Public Defender

        /S/

        JAY RORTY
        Assistant Federal Public Defender

---

[1] Unlike Ms. Lopez, the suspect in Collazo was under arrest and therefore the officers in that case violated Miranda in addition to the Due Process prohibition against involuntary statements.  In both cases, however, the officers pressured the suspect by stressing the negative consequences of insisting on counsel.

Points and Authorities in Support of Motion to Suppress         5