DEFENDANT'S EXHIBIT A

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Mitchell A. Herzog, being duly sworn, hereby depose and state the following:

### INTRODUCTION AND PURPOSE OF AFFIDAVIT

1. This affidavit is submitted in support of a request for the issuance of a complaint for Claudia Maria Lopez, a person involved in conspiring to illegally distribute Lysergic Acid Diethlamide, (hereafter, "LSD,") a federally controlled substance, in violation of 21 U.S.C. § 846. As described below, Lopez's conduct in mailing LSD from San Jose, California to Anchorage, Alaska provides evidence of her knowing involvement in conspiring to distribute LSD in the Northern District of California, in violation of 21 U.S.C. §§ 846 and 841.

### AFFIANT'S BACKGROUND

2. I am a United States Postal Inspector, assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail. I have been a Postal Inspector since November 1985. As part of my duties, I investigate incidents where the mail system is used for the purpose of transporting non-mailable matter, including controlled substances such as marijuana, cocaine, methamphetamine, LSD, and heroin. In March 2007, I participated in a one-week drug interdiction in McAllen, TX studying the various mailing characteristics of narcotic traffickers for outgoing parcels. I have interviewed witnesses and cooperating individuals regarding illegal trafficking in drugs and have read official reports of other officers. During March 2007, I also completed an online training course presented by the United States Postal Inspection Service addressing current trends in narcotics mailing, reasonable suspicion, probable cause, search warrants and profiling.

1



3. I am familiar with the facts as set forth herein from my personal observations, observations by other law enforcement officers as related to me in conversation and in written reports, and from documents and other evidence obtained as a result of this investigation.

## STATEMENT OF PROBABLE CAUSE

4. On March 14, 2007, Postal Inspector Norman Longaza contacted me and informed me about an investigation he had completed in Anchorage, AK. Inspector Longaza said that on Friday February 23, 2007, he had interdicted an Express Mail package sent to Alaska from an address in San Jose, California. Inspector Longaza stated that he had obtained a search warrant for the package from a United States Magistrate Judge in Alaska. Upon opening the package pursuant to the warrant, Inspector Longaza found approximately six grams of a substance which field-tested positive for LSD in liquid form. The package was addressed to Jason Wilson, 1102 C Street, Anchorage, AK 99501. The package was addressed from: "Sandra Cruz, 1127 Boyton #A, San Jose, CA 95117." Inspector Longaza told me that the LSD was sent to the State of Alaska Crime Lab for verification. Inspector Longaza further told me that he subsequently requested and received authorization from a United States Magistrate Judge in Alaska to insert an electronic monitoring device into the package and monitor the package during a planned controlled delivery to the designated address in Anchorage.

5. Inspector Longaza provided me with a photocopy of the mailing label on the package. Based upon the information contained on the mailing label, I identified the originating post office for the package as the Westgate Station Post Office branch in San Jose, California. I visited Westgate Station and confirmed from documents on file at

2

③

that location that the package had been mailed from the Westgate Station on February 22, 2007.

6. Inspector Longaza told me that on Thursday March 1, 2007, at approximately, 11:53 a.m., DEA agents and U.S. Postal Inspectors in Anchorage conducted a controlled delivery of the package. Agents had removed the original six grams of LSD liquid and inserted fruit juice made to look like the original LSD liquid into the package. The box was made to look identical to the intercepted box. The bottle containing the "sham" LSD was sprayed with a theft detection powder which adheres to the a person's hands to aid law enforcement in determining the identity of the person or persons actually handling the bottle containing the LSD.

7. During the ensuing controlled delivery, Inspector Longaza personally posed as the mail carrier delivering the package and approached the 1102 C Street address in Anchorage (the listed recipient address on the package). Inspector Longaza made contact with an individual subsequently identified as Jason Michael Wilson. According to Inspector Longaza, Wilson accepted the intercepted parcel containing the electronic alerting device, and brought it into the 1102 C Street residence. Inspector Longaza told me that during the delivery, Wilson looked at the parcel as he accepted it and said, "Sweet!"

8. Inspector Longaza stated that approximately one minute after the delivery, the electronic monitoring device alerted, indicating the box had been opened. Approximately 15 minutes later, as permitted by the federally authorized beeper order, law enforcement officials approached the residence for the purpose of entering it and retrieving the electronic alerting device. As law enforcement officials approached the

3



residence, Wilson came out the front door and was subsequently detained. Agents also contacted a white adult female present at the residence, Terry Petrelli.

9. Agents subsequently entered the residence for two reasons: (1) to retrieve the electronic alerting device, and (2) to conduct a protective sweep of the residence. Inside, the residence, law enforcement officials observed the opened parcel on the dining room table. The package had been opened and the "sham" bottle had been removed along with several opened candy items that had been included in the original package and previously wrapped in gift wrap. Inspector Longaza said law enforcement officials located the "sham" bottle of LSD in a jacket pocket that was worn by Wilson as he departed the residence.

10. Inspector Longaza told me that law enforcement officials found traces of theft detection powder on Wilson's hands, indicating that he had handled the "sham" bottle of LSD which law enforcement had placed in the package. Inspector Longaza told me that Wilson was subsequently read his Miranda rights and voluntarily agreed to waive those rights and answer questions at the DEA office. During this interview, Wilson admitted ordering the LSD from one Sandra Cruz, a person whom he also knew as Claudia Lopez, in San Jose, CA. Wilson gave permission for the phone number of Claudia Lopez to be identified from a review of his cell phone. Wilson stated that he had contacted Cruz approximately three weeks earlier and asked her to send him some money to help him pay his rent. Wilson stated Cruz subsequently called him back and told him she had sent him some good "wine." Wilson stated he asked her if it was "Jerry Garcia wine" and she answered affirmatively. Wilson stated "Jerry Garcia wine" was slang for LSD. Wilson stated Cruz was expected to be paid $800 in U.S. Currency for the LSD.

4

Wilson also stated Cruz told him there were "probably a couple of hundred drops" of LSD in the bottle.

11. On April 18, 2007, I, interviewed Claudia Maria Lopez at her residence in San Jose, California. Prior to the start of the interview, Claudia M. Lopez was read her Miranda rights via PS Form 1067, the U.S. Postal Inspection Service Warning and Waiver of Rights. Lopez signed the warning portion of the form indicating that she understood her rights. She also signed the waiver portion of the form indicating her willingness to answer questions presented. Lopez then made the following statements in response to questions posed by law enforcement.

12. Lopez admitted that she sent the liquid LSD to Jason Wilson in Anchorage, AK. Lopez stated that Jason had requested the LSD from her. Lopez stated that she never expected to receive any money and had never told Jason how to package the LSD into individual dosage amounts or to sell the LSD in local bars. Lopez maintained the LSD was for Wilson's personal use. When asked about the source of the LSD, Lopez said she got the LSD on Haight St., in San Francisco. She explained that she had traded marijuana for the LSD. She again repeated that the LSD she had mailed to Wilson was for his personal use only. Lopez was asked if there was a Sandra Cruz and she admitted that "Sandra Cruz" was a name she had made up when sending the express mail package to Jason Wilson. She stated the Boyton address was phony and that she lived around the corner from Boyton. Lopez again maintained that Wilson had asked her for the LSD.

//

//

//

5



## CONCLUSION

13. Based upon the above-summarized facts, there is probable cause to believe that Claudia Maria Lopez knowingly participated in a conspiracy to illegally distribute LSD, in violation of 21 U.S.C. §§ 846 and 841.

Mitchell A. Herzog
Postal Inspector, U.S. Postal Service

Subscribed and sworn to me this __3__ day of May, 2007

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6